IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

LARISSA JEANNE GARNER                                                    PLAINTIFF


        v.                         CASE NO.        2:11-CV-02015


MICHAEL J. ASTRUE, Commissioner
of Social Security Administration                                        DEFENDANT

**<u>MEMORANDUM OPINION</u>**

Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits (DIB) and supplemental security income ("SSI") under Title II of the Social Security Act (Act), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.      Procedural Background:**

The plaintiff filed her applications for DIB and SSI on December 13, 2007, alleging an onset date of January 1, 2000, due to plaintiff's Crohn's Disease but the onset date was amended to October 15, 2007 (T. 124). Plaintiff's applications were denied initially and on reconsideration. Plaintiff then requested an administrative hearing, which was held on March 16, 2009. Plaintiff was present and represented by counsel.

At the time of the administrative hearing, plaintiff was 20 years of age and possessed a GED. The Plaintiff  had past relevant work ("PRW") experience as a waitress  (T. 19).

On August 26, 2009, the Administrative Law Judge ("ALJ") concluded that, although severe, plaintiff's Crohn's Disease did not meet or equal any Appendix 1 listing.  T. 54.  The ALJ found that plaintiff maintained the residual functional capacity ("RFC") to perform light work except that she should do no sustained driving secondary to pain and that she was unable to climb scaffolds, ladders or ropes, and could only occasionally climb ramps and stairs, stoop, bend, crouch, crawl, kneel and balance.  The ALJ also determined that she should not work at unprotected heights or work around dangerous equipment and machines and would need access to bathroom breaks averaging at least five times during a workday. T. 54.  With the assistance of a vocational expert, the ALJ then determined Plaintiff could perform the "requirements of representative occupations such as general office clerk.  T. 59.

## II.    Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).  Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision.  *Id.*  "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision."  *Id.*  As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently.  *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001).  If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the

decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

## III. **Discussion**:

The ALJ found that the Plaintiff's Crohn's disease was a severe impairment (T. 53) but

-3-

that she did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in the Regulations. (T. 54). This conclusion by the ALJ is not disputed by the Plaintiff and is supported by the record.

The Plaintiff does contend that the ALJ failed to properly develop the record concerning the Plaintiff's allegations of depression and that the RFC determination was improper.

## A. Failure to Develop the Record

The ALJ has a duty to fully and fairly develop the record. *See Frankl v. Shalala*, 47 F.3d 935, 938 (8th Cir. 1995)(ALJ must fully and fairly develop the record so that a just determination of disability may be made). The ALJ is not required to act as Plaintiff's counsel. *See Clark v. Shalala*, 28 F.3d 828, 830 (8th Cir. 1994) (ALJ not required to function as claimant's substitute counsel, but only to develop a reasonably complete record); *see also Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995) ("reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial").

Some of the factors an ALJ may consider when determining a claimant's mental impairments are (1) the claimant's failure to allege mental impairments in his complaint, (2) failure to seek mental treatment, (3) the claimant's own statements, and (4) lack of medical evidence indicating mental impairment. See *Smith v. Shalala,* 987 F.2d 1371, 1375 (8th Cir. 1993)

The Plaintiff did not initially list depression as any basis for her disability but only listed Crohn's disease. In the Plaintiff's Disability Report dated December 13, 2007 when asked how her illnesses limited her ability to work she stated that she had "stomach pain and nausea all the

time" and that she had to take medication for it and could not drive. (T. 124). The fact that the plaintiff did not allege depression as a basis for her disability in her application for disability benefits is significant, even if the evidence of depression was later developed. See *Smith v. Shalala*, 987 F.2d 1371, 1375 (8th Cir.1993); *Dunahoo v. Apfel*, 241, F. 3d 1033, 1039 (8th Cir. 2001).

The Plaintiff reported on a subsequent Disability Report that she had new physical and mental limitations because she had to "go to the bathroom 10 times a day depression" (T. 135) however, there is no medical document in the record makes a diagnosis of depression. Regardless the Plaintiff never sought treatment for this alleged condition.

It is true that, "[w]hile not dispositive, a failure to seek treatment may indicate the relative seriousness of a medical problem ." *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir.1995). *Id*.; *See Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (holding that lack of formal treatment by a psychiatrist, psychologist, or other mental health professional is a significant consideration when evaluating Plaintiff's allegations of disability due to a mental impairment). The court also notes that none of the medications that the Plaintiff listed she was taking at the time she filed for disability were anti-depressant medicines (T. 142).

The Eighth Circuit has also held that there must be some evidence in the record that would prompt an ALJ to inquire further into a condition by ordering a consultative examination. *See Hensley v. Barnhart*, 352 F.3d 353, 357 (8th Cir. 2003).  In this case there was none.  On March 6, 2007 when the Plaintiff was seen at SEMMC emergency room for abdominal pain the neurological exam shows that the is awake, alert, oriented times three with no focal deficits. (T. 177). During visits with Dr. de Mondesert noted that the Plaintiff was doing well in May 2007

-5-

(T. 178), and April 2006 (T. 183).  He did have a notation that she was out of control in September 2006 (T. 182) but did not attribute that to depression but because she had been kicked out of her parent's home and was non compliant with her medication. (Id.).  The Plaintiff had a colonoscopy performed at Sparks Regional Medical Center on September 18, 2008 and the discharge report showed "Psychiatric: Appropriate" (T. 219).

The ALJ committed no error in refusing to order a consultive examination to determine the Plaintiff's mental impairments.

## B.  Subjective Complaints

The Plaintiff made numerous complaints of subjective pain which the ALJ appropriately noted in her decision. (T. 55).  The ALJ must consider several factors when evaluating a claimant's subjective complaints of pain, including claimant's prior work record, observations by third parties, and observations of treating and examining physicians relating to 1) the claimant's daily activities; 2) the duration, frequency, and intensity of pain; 3) precipitating and aggravating factors; 4) dosage, effectiveness and side effects of medication; and 5) functional restrictions. Casey, 503 F.3d at 695 (8th Cir.2007) (citing Polaski v. Heckler, 729 F.2d 1320, 1322 (8th Cir.1984). The ALJ may discount subjective complaints when they are inconsistent with the evidence as a whole. Id. (citing Polaski, 739 F.2d at 1322). "The ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered." Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir.2004).

(a) Failure to follow course of treatment

In addition to the results of objective medical tests, an ALJ may properly consider the claimant's noncompliance with a treating physician's directions, Holley v. Massanari, 253 F.3d

-6-

1088, 1092 (8th Cir.2001), including failing to take prescription medications, *Riggins,* 177 F.3d at 693, seek treatment, *Comstock v. Chater*, 91 F.3d 1143, 1146-47 (8th Cir.1996), and quit smoking. *Kisling v. Chater*, 105 F.3d 1255, 1257 (8th Cir.1997); *Choate v. Barnhart* 457 F.3d 865, 872 (C.A.8 (Mo.),2006).

The ALJ pointed out that the Plaintiff was initially diagnosed with Crohn's disease in August 2002 (T. 249) and was instructed to follow a low residue diet[1] (T. 250). When the Plaintiff was seen next by her treating physician in November 2002 for exacerbation of Crohn's ileocolitis he noted that she was "not compliant with diet restrictions".(Id.).

Dr. Eduardo A de Mondesert, a Gastroenterologist with Cooper Clinic[2], noted that the Plaintiff was doing well on her medication (Imuran) in April 2006 (T.183) but she was noncompliant with her medication in September 2006 (T. 182),  May 2007 (T. 178) and November 2007 (T. 197).

(b) Responsive to medication

In November 2006 Dr. de Mondesert noted that the Plaintiff's Crohn's iletis was "under good control on Imuran 150 mg per day" (T. 181). In May 2007 Dr. de Mondesert noted that the Plaintiff's "Crohn's disease was under good remission" and the Plaintiff's problem had been "poor compliance with medication" (T. 197). Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits. *See, e.g., Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir.2004); *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th

---

[1]A low residue diet is one giving the least possible fecal residue.

[2]Dr. deMondesert was the original consulting physician when the Plaintiff presented to Sparks in 2002 (T. 249)

Cir.1987); see also *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir.1983) (affirming a denial of benefits and noting that the claimant's impairments were responsive to medication). *Warre v. Commissioner of Social Sec. Admin*. 439 F.3d 1001, 1006 (C.A.9 (Or.),2006). "The ALJ may properly consider both the claimant's willingness to submit to treatment and the type of medication prescribed in order to determine the sincerity of the claimant's allegations of pain." *Thomas v. Sullivan*, 928 F.2d 255, 259 (8th Cir.1991) (citations omitted). *Gray v. Apfel* 192 F.3d 799, 804 (C.A.8 (S.D.),1999).

The court also notes that Dr. de Mondesert is a specialist in the field of gastroenterology. Opinions of specialists on issues within their areas of expertise are "generally" entitled to more weight than the opinions of non-specialists. See 20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5). *Guilliams v. Barnhart* 393 F.3d 798, 803 (C.A.8 (Mo.),2005), 20 C.F.R. § 404.1527.

On June 12, 2007 the Plaintiff called Dr. de Mondesert requesting that her pain medication be refilled but Dr. de Mondesert refused and entered an order stating that he would not give the Plaintiff anymore pain medication (T. 203). The Plaintiff presented to the SEMMC emergency room on June 27, 2007complaining of abdominal pain (T. 166).  The ER doctor contacted Dr. de Mondesert concerning a narcotic pain prescription but Dr. de Mondesert requested that she not be given any narcotics (T. 166).

Dr. de Mondesert's concern over pain medication had previously been expressed in his notes of May 11, 2007 where he noted the Plaintiff admitted skipping her Imuran medication but she never skipped her pain medication. (T. 179).

It is clear that Dr. de Mondesert's opinion was that the medication he prescribed for the Plaintiff was controlling her Crohn's disease symptoms when properly taken.

(c) Working after onset

The Plaintiff contacted Dr. de Mondesert's office on October 8, 2007 and stated that she was "set for community service today" and needed a doctor's note (T. 200). She also contacted the doctor's office on October 22, 2007 stating that she "worked from 8:00-10:30" and that she was unable to stay at work and needed a doctor's note (T. 199).

The record is unclear concerning why the Plaintiff had community service to perform or what "work" the Plaintiff was doing or for how long she had performed such work. It is clear that she was doing some work or had agreed to work off existing fines rather than pay them. Absent a showing of deterioration, working after the onset of an impairment is some evidence of an ability to work. *See Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir.2005).

The court cannot say that their was no basis for the ALJ to discount the subjective complaints of the Plaintiff.

**B. RFC**

The ALJ found that plaintiff maintained the residual functional capacity ("RFC") to perform light work except that she should do no sustained driving secondary to pain and that she was unable to climb scaffolds, ladders or ropes, and could only occasionally climb ramps and stairs, stoop, bend, crouch, crawl, kneel and balance. The ALJ also determined that she should not work at unprotected heights or work around dangerous equipment and machines and would need access to bathroom breaks averaging at least five times during a workday. T. 54.

 RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is defined as the individual's maximum remaining ability to do sustained work activity in an ordinary work setting "on a regular and continuing basis." 20 C.F.R. §§

404.1545 and 416.945; Social Security Ruling (SSR) 96-8p (1996). It is assessed using all relevant evidence in the record. *Id*. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003). Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner.*620 20 C.F.R. §§ 416.927(e)(2), 416.946 (2006).

The ALJ stated that she had considered the opinions of the agency medical consultants "who provided residual functional capacity assessments" at the initial and reconsideration levels. The then referred to Exhibits 3F and 6F, however, in the record these exhibits are only Request for Medical Advice (T. 190-191) and a review by Ronald Crow dated March 24, 2008 (T. 195) which merely states that the "assessment of 1/28/08 is affirmed as written". There is no RFC assessment in the record presented to the court although it is clear that one was performed and presented to the ALJ. A reference to the RFC occurs in the Reconsideration Request for Medical Advice which indicated that Dr. Davidson rated the Plaintiff  "Non-severe/01-28-08" (T. 194). It does not appear that the Plaintiff's treating physicians or any of the non-examining consultive physicians ever placed any work restrictions upon the Plaintiff.

-10-

The ALJ, however, discounted the RFC assessment performed by the non-examining consultive physicians and ascribed more limitations to the Plaintiff than the agency consultants did. One of the limitations that the ALJ found applicable to the Plaintiff was her need for bathroom breaks during the day because of her Crohn's disease.

The only objection made by the Plaintiff to the ALJ's RFC assessment is that she failed to give proper weight to her need to have unscheduled bathroom breaks (EFC No. 9, p. 11). The Plaintiff testified that she would have to use the bathroom sometimes five to ten times a day. The ALJ noted that there was nothing in the Cooper Clinic records indicating uncontrolled bowel movements and when the ALJ asked her when this started the Plaintiff replied that it had "been going on for about a year now" [3] (T. 27).

A review of the medical records during the time period the Plaintiff contends she was suffering this condition do not support her contention.

On September 18, 2008 a colonoscopy was performed at Sparks Regional Medical Center and the colon appear normal but as the right colon was entered there was noted a fairly "tight stricture" (T. 220). On September 23, 2008 the Plaintiff presented to Sparks Regional Medical Center emergency room with abdominal pain. She had normal bowel sounds (T. 219) and her bowel movements were noted to be within normal limits (T. 218). There is no medical record to support the Plaintiff's claim that she needs to use the bathroom five to ten times per day nor does she appear to have sought any treatment for that condition.

Here, the ALJ considered all the relevant evidence, including the medical records, the assessments of Plaintiff's treating physicians, non-examining state agency physicians, and

---

[3]The hearing was conducted on March 16, 2009.

Plaintiff's own description and testimony regarding her physical and limitations (Tr. 55-58). *See Krogmeier*, 294 F.3d at 1024.  This issue evolves around a credibility determination which the court has previously noted the ALJ was correct to discount.

## C.  Vocational Expert

At step five in the sequential evaluation process, the burden shifts to the Commissioner to show that there is work that the claimant is able to perform. *See Cruze v. Chater*, 85 F.3d 1320, 1322 (8th Cir. 1996); *Clark v. Shalala*, 28 F.3d 828, 830 (8th Cir. 1994).

In response to the ALJ's hypothetical question based upon her RFC, the vocational expert testified that such a hypothetical individual could perform the job of general office clerk (Tr. 40). Plaintiff alleges that the ALJ's hypothetical question to the vocational expert did not recognize that Plaintiff's need to use the restroom is unpredictable in terms of frequency and timing, and that the ALJ's attempt to limit Plaintiff to using the bathroom during regular breaks and allowing for only two unscheduled visits to the bathroom is inconsistent with the typical manifestation of Crohn's disease. See Pl.'s Br. at 13-14. However, the ALJ properly relied on the vocational expert's testimony because, as discussed above, substantial evidence supported the ALJ's residual functional capacity assessment, and the ALJ's hypothetical question to the vocational expert mirrored the ALJ's residual functional capacity assessment (Tr. 39-40). The Eighth Circuit has held that testimony from a vocational expert that is based on a properly-phrased hypothetical question constitutes substantial evidence, and a proper hypothetical question presents to the vocational expert a set of limitations that mirror those of the claimant. *See Pierce v. Apfel*, 173 F.3d 704, 707 (8th Cir. 1999).  The ALJ properly relied on a vocational expert's testimony to demonstrate the existence of a significant number of jobs in the national economy that Plaintiff

could perform (Tr. 59 [Finding 9]).

**V.      Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial

evidence supporting the ALJ's decision, and thus the decision should be affirmed.  The

undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

Dated  this February 3, 2012.

/s/ J. Marschewski

HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE